IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE DIET DRUGS (PHENTERMINE/FENFLURAMINE/ DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | MDL No. 1203 |
| SHEILA BROWN, et al. v. AMERICAN HOME PRODUCTS CORPORATION | Civil Action No. 99-20593 |
| This document relates to: | |
| LINDA HARMON, et al. v. WYETH-AYERST PHARMACEUTICALS, INC., et al.; | Civil Action No. 02-20082 |
| DUWANDA ROBBINS, et al. v. WYETH-AYERST PHARMACEUTICALS, INC., et al.; | Civil Action No. 02-20081 |
| JANICE BINION, et al. v. WYETH-AYERST PHARMACEUTICALS, INC., et al.; | Civil Action No. 02-20119 |
| LILLIAN CHANDLER, et al. v. WYETH-AYERST PHARMACEUTICALS, INC., et al.; | Civil Action No. 02-20120 |
| PATRICIA MOSLEY, et al. v. WYETH-AYERST PHARMACEUTICALS, INC., et al.; | Civil Action No. 02-20122 |
| MARY F. SANDERS, et al. v. WYETH-AYERST PHARMACEUTICALS, INC., et al.; | Civil Action No. 02-20121 |
| - and - BRENDA STALLINGS, et al. v. WYETH-AYERST PHARMACEUTICALS, INC., et al. | Civil Action No. 02-20118 |

PRETRIAL ORDER NO._____

WHEREAS, defendant Wyeth (formerly known as American Home Products Corp.) has filed a Motion to Dismiss Certain Plaintiffs, and the Court having considering all papers submitted in connection therewith, it is hereby:

ORDERED that the claims of plaintiffs Beverly Fleming (*Binion*); Velma Bell (*Harmon*) Arma Harper (*Mosley*) Valenta Allen-Williams (*Mosley*), Edward McArthur (*Stallings*), Robert Fulton McDaniel (*Binion*), Anthony Earl Sykes (*Binion*) Lillian Chandler (*Chandler*), Felicia Edwards (*Harmon*), Donna Murphy (*Harmon*), and Johnny Earl Clark (*Stallings*) are dismissed with prejudice;

ORDERED that the claims of the Class Members listed in Section II(B) of Wyeth's Memorandum of Law in Support of its Motion to Dismiss Certain Plaintiffs are dismissed with prejudice;

ORDERED that the claims of the non-opt out plaintiffs listed in Section II(C) of Wyeth's Memorandum of Law in Support of its Motion to Dismiss Certain Plaintiffs are dismissed with prejudice;

ORDERED that within 30 days all downstream Opt-Out plaintiffs whose echocardiogram report shows purported FDA-Positive regurgitation file an Amended Complaint specifying the injury claimed and limiting their claims and damages to that injury;

ORDERED that within 30 days plaintiffs sever the Initial Opt-Outs from the downstream Opt Outs;

ORDERED that within 30 days plaintiffs deliver to Wyeth plaintiff fact sheets and a List of Medical Providers with executed Medical Authorizations for each remaining plaintiff in these cases.

2

SO ORDERED:

_____
Harvey S. Bartle, III, U.S.D.J.

Date: _____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE DIET DRUGS (PHENTERMINE/FENFLURAMINE/ DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | MDL No. 1203 |
| SHEILA BROWN, *et al.* v. AMERICAN HOME PRODUCTS CORPORATION | Civil Action No. 99-20593 |
| This document relates to: | |
| LINDA HARMON, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.*; | Civil Action No. 02-20082 |
| DUWANDA ROBBINS, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.*; | Civil Action No. 02-20081 |
| JANICE BINION, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.*; | Civil Action No. 02-20119 |
| LILLIAN CHANDLER, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.*; | Civil Action No. 02-20120 |
| PATRICIA MOSLEY, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.*; | Civil Action No. 02-20122 |
| MARY F. SANDERS, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.*; - and - | Civil Action No. 02-20121 |
| BRENDA STALLINGS, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.* | Civil Action No. 02-20118 |

**WYETH'S MOTION TO DISMISS CERTAIN PLAINTIFFS**

Upon the accompanying Memorandum of Law and Exhibits in Support of this Motion, Wyeth respectfully moves this Court to enter an Order:

(1) Directing plaintiffs Beverly Fleming (*Binion*); Velma Bell (*Harmon*) Arma Harper (*Mosley*) Valenta Allen-Williams (*Mosley*), Edward McArthur (*Stallings*), Robert Fulton McDaniel (*Binion*), Anthony Earl Sykes (*Binion*) Lillian Chandler (*Chandler*), Felicia Edwards (*Harmon*), Donna Murphy (*Harmon*), and Johnny Earl Clark (*Stallings*) to dismiss their claims with prejudice because they have otherwise settled with Wyeth or elected the AIO;

(2) Directing the Class Members listed in Section II(B) of the accompanying Memorandum of Law to dismiss their claims against Wyeth with prejudice for failure to meet the medical eligibility requirements for prosecuting a downstream Opt-Out of the Settlement Agreement;

(3) Directing the non-opt out plaintiffs listed in Section II(C) of the accompanying Memorandum of Law to dismiss their claims with prejudice for failure to meet the medical eligibility requirements for prosecuting a PPH claim; for failure to comply with PTO 2383, and because they do not meet the Settlement Agreement definition of PPH, consistent with the findings of PTO 1415;

(4) Directing that within 30 days all downstream Opt-Outs whose echocardiogram report shows purported FDA-Positive regurgitation file an Amended Complaint specifying the injury claimed and limiting their claims and damages to that injury;

(5) Directing plaintiffs to within 30 days comply with the provisions of PTO 2627 and sever the Initial Opt-Outs from the downstream Opt Outs;

175846-1                                              2

(5)     Directing plaintiffs to comply with PTO 2930 and within 30 days deliver to Wyeth plaintiff fact sheets and a List of Medical Providers with executed Medical Authorizations for each remaining plaintiff in these cases.

A proposed Order embodying the relief requested is filed herewith.

Respectfully submitted,

*Paul B. Kerrigan*

Peter L. Zimroth
Anand Agneshwar
Dorothy N. Giobbe
ARNOLD & PORTER
399 Park Avenue
New York, NY 10022-4690
(212) 715-1000

Robert D. Rosenbaum
ARNOLD & PORTER
555 Twelfth Street, NW
Washington, DC 20004-1202
(202) 942-5000

Michael T. Scott
Paul B. Kerrigan
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
(215) 851-8100

Attorneys for Defendant Wyeth

Dated: October 24, 2003

175846-1                                               3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE DIET DRUGS (PHENTERMINE/FENFLURAMINE/ DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | MDL No. 1203 |
| SHEILA BROWN, *et al.* v. AMERICAN HOME PRODUCTS CORPORATION | Civil Action No. 99-20593 |
| This document relates to: | |
| LINDA HARMON, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.*; | Civil Action No. 02-20082 |
| DUWANDA ROBBINS, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.*; | Civil Action No. 02-20081 |
| JANICE BINION, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.*; | Civil Action No. 02-20119 |
| LILLIAN CHANDLER, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.*; | Civil Action No. 02-20120 |
| PATRICIA MOSLEY, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.*; | Civil Action No. 02-20122 |
| MARY F. SANDERS, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.*; | Civil Action No. 02-20121 |
| - and - BRENDA STALLINGS, *et al.* v. WYETH-AYERST PHARMACEUTICALS, INC., *et al.* | Civil Action No. 02-20118 |

**WYETH'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS CERTAIN PLAINTIFFS**

In these seven actions, all filed by the same plaintiffs' counsel, some 249 plaintiffs have asserted claims against Wyeth in lawsuits filed in Mississippi. Six of the seven named plaintiffs in these cases have filed initial opt-outs from the Nationwide Class Action Settlement Agreement. The remaining plaintiffs who have opted out claim the right to sue as downstream opt-outs. Yet both substantively and procedurally they are flouting the Settlement Agreement. All of the complaints cavalierly make allegations about *primary pulmonary hypertension* ("PPH"), though the Settlement Agreement provides, and this Court repeatedly has held, that downstream opt-outs may neither claim damages for nor present evidence of PPH. The Complaints directly ask for punitive damages, though again, the Settlement Agreement provides, and this Court has held, that downstream opt-outs may not seek punitive damages. More substantively, although almost all of the plaintiffs have filed Intermediate and/or Back-End Opt-Out forms, the vast majority have produced echocardiogram reports *by their own experts* which do not even *purport to show* the FDA-Positive regurgitation needed to qualify as an Intermediate Opt-Out, let alone the matrix-level condition that they must be diagnosed with before filing a Back-End Opt-Out lawsuit.

For over one year Wyeth has been attempting to resolve these issues with plaintiffs' counsel, without the need for court intervention. Wyeth's counsel has sent numerous letters and made even more phone calls to plaintiffs' counsel requesting their cooperation in streamlining these cases.[1] Our phone calls are routinely ignored and not returned. Letters are ignored. Thus, we are compelled to seek the Court's intervention.

---

[1] *See* correspondence attached as Exhibit A.

175846-1                                  2

These Complaints are a procedural and substantive mess, naming numerous plaintiffs who have no business filing diet drug lawsuits. The claims of 171 of these plaintiffs should be dismissed outright for the following reasons:[2]

- Some 7 plaintiffs have settled their claims and released Wyeth (and all its subsidiaries and divisions) as part of other settlement groups. An additional 5 plaintiffs have elected the Accelerated Implementation Option ("AIO"). Wyeth repeatedly has requested plaintiffs' counsel to dismiss these plaintiffs, with no response. (*see, e.g.,* Exhibit A).

- Some 135 purport to be entitled to sue as downstream Opt-Outs but their own echocardiogram reports do not even diagnose them with FDA-Positive valvular regurgitation, let alone with matrix-level conditions. They therefore cannot even claim to meet the medical eligibility requirements to bring an Intermediate Opt-Out or Back-End Opt-Out claim.

- All of the 11 non-opt out plaintiffs in these cases should be dismissed because they have not cured their non-opt out status by demonstrating their right to sue for PPH pursuant to PTO 2383.[3]

- Some 13 plaintiffs should be dismissed because, pursuant to PTO 1415, although their echocardiograms indicate elevated pulmonary artery systolic pressures, they also have at least moderate mitral regurgitation or moderate aortic insufficiency, which disqualifies a PPH claim under the Settlement Agreement.

---

[2] Wyeth's information is compiled from records that it has received to date. Wyeth would file supplemental motions or take other action on the receipt of additional records and information about the plaintiffs in these cases. Wyeth also reserves the right to file supplemental motions or take other action based on (or after) the review of plaintiffs' purportedly qualifying echocardiogram tapes.

[3] For former diet drug users who have not filed an Initial, Intermediate, or Back-End Opt Out, the only possible remaining claim is for PPH if, and only if, the plaintiff meets the PPH definition in the Settlement Agreement.

As to the remaining plaintiffs whose echocardiogram reports purport to show FDA-Positive regurgitation (all of whom are downstream Opt-Outs), Wyeth respectfully requests that this Court direct those plaintiffs to file Amended Complaints that assert claims for only those injuries and damages permitted by the Settlement Agreement. As discussed *infra*, all of the Complaints assert claims for injuries not permissible for downstream Opt-Outs. The plaintiffs should be ordered to file Amended Complaints that allege in detail the specific injury on which that plaintiff bases his or her claim as a downstream Opt-Out, and limits the claims asserted to that injury.

I.  **INTRODUCTION AND PROCEDURAL BACKGROUND**

Plaintiffs filed these seven actions in Mississippi state court on behalf of 249 plaintiffs in August 2001 and shortly thereafter.[4] Six actions, on behalf of 210 of those plaintiffs, were filed in Noxubee County, Mississippi, a rural county having a total population of approximately 12,500 people. All of the cases were filed by the same plaintiffs' counsel. The complaints in each case are virtually identical, though the names of the plaintiffs differ. For example, all 249 plaintiffs purport to have PPH and valve disease, and all plaintiffs assert claims for punitive and/or exemplary damages. The vast majority of plaintiffs purport to be bringing their claims as downstream opt-outs. Wyeth removed all seven of these actions to the United States District Court for the Southern District of Mississippi, and the Judicial Panel on Multidistrict Litigation subsequently transferred them to this Court.[5]

---

[4] *See Binion, Chandler, Harmon, Mosely, Robbins, Sanders,* and *Stallings* complaints, Exhibits B-H hereto.

[5] Wyeth's removals were based, among other things, on diversity jurisdiction, as plaintiffs sued Wyeth, Mississippi pharmacies and phentermine defendants. Both the Mississippi Supreme
Footnote continued on next page

175846-1           4

## II. ARGUMENT

### A. THE CLAIMS OF 13 PLAINTIFFS MUST BE DISMISSED BECAUSE THEY HAVE ALREADY OTHERWISE SETTLED WITH WYETH OR THEY HAVE RECEIVED MONEY OR BENEFITS UNDER THE ACCELERATED IMPLEMENTATION OPTION

Individuals who have already settled diet drug claims obviously cannot simply file another lawsuit. Once this fact has been brought to the attention of plaintiffs' counsel it should not take motion practice to get these claimants dismissed. Yet that is precisely what has occurred.

Plaintiffs Robert Fulton McDaniel (*Binion*), Anthony Earl Sykes (*Binion*) Lillian Chandler (*Chandler*), Felicia Edwards (*Harmon*), Donna Murphy (*Harmon*), and Johnny Earl Clark (*Stallings*) have settled their claims and released Wyeth and all its subsidiaries and divisions as part of other settlement groups. These plaintiffs agreed to the dismissal of their claims with prejudice. *See* Exhibit I[6]. They therefore are barred from prosecuting claims in the instant cases.

Additionally, plaintiffs Beverly Fleming (*Binion*); Velma Bell (*Harmon*) Arma Harper (*Mosley*) Valenta Allen-Williams (*Mosley*), and Edward McArthur (*Stallings*) should be enjoined from prosecuting the instant lawsuits against Wyeth because they have settled their claims by exercising the Accelerated Implementation Option ("AIO")

---

Footnote continued from previous page
Court and this Court have held that Mississippi law does not recognize product liability causes of action against pharmacies. This Court has held that diet drug plaintiffs have no reasonable possibility of stating a claim against phentermine companies. Thus, these defendants are fraudulently joined and this Court has subject matter jurisdiction over these cases. Plaintiffs filed motions to remand in the transferor court, but the motions were not renewed before this Court.

[6] Wyeth is still in the process of collecting the settlement documents and releases that pertain to these plaintiffs. When all of the documents are collected, Wyeth will supplement Exhibit I in the Appendix of Exhibits by filing these documents with the Court. However, Wyeth intends to file these documents under seal because they are confidential.

under the Settlement Agreement.[7] Class members who elect the AIO waive all downstream opt-out rights. Settlement Agreement § V(E).

The Pink Form that the aforementioned plaintiffs signed contained a release and covenant not to sue clearly stating that:

> "I, the undersigned claimant, individually and for my heirs, beneficiaries, agents, estates, executors, administrators, personal representatives, successors and assignees . . . hereby expressly **release and forever discharge, and agree not to sue,** AHP and all other Released Parties . . . as to all Settled Claims . . . ."

Ex. J (emphasis in original). Class members who accepted the AIO have completely discharged Wyeth from any and all claims they might have relating to their use of Pondimin or Redux. As this Court discussed in PTO 2111, "the AIO provides a means for class members satisfied with the Settlement and **willing to waive their initial, intermediate, and back-end opt-out rights** to obtain the benefits of the Settlement without regard to Final Judicial Approval." PTO 2111 at 2 (citing Settlement Agreement § V; PTO 1415)(emphasis added). The Court explained that "[u]pon execution and submission of the completed pink form, AHP is deemed to have entered into a private contract to provide all of the benefits that the class member would be entitled to receive under the Settlement Agreement regardless of whether or not the Settlement receives Final Judicial Approval." *Id.* at 2-3. Submitting an AIO form constitutes an unconditional release of all Settled Claims against Wyeth and an express waiver of all

---

[7] On March 17, 2000, Ms. Fleming elected the AIO by filing a signed "Pink Form." On April 12, 2000, Ms. Bell elected the AIO by filing a signed "Pink Form." On November 12, 2001, Ms. Harper elected the AIO by filing a signed "Pink Form." On September 15, 2000, Ms. Allen-Williams elected the AIO by filing a signed "Pink Form." On April 3, 2001, Mr. McArthur selected the AIO by submitting a signed "Pink Form." True and correct copies of the aforementioned Pink Forms are attached hereto as Exhibit J.

opt-out rights and, accordingly, an AIO claimant may not bring a lawsuit against Wyeth outside of the Settlement Agreement. *Id.* at 9-10 (denying AIO claimant's motion to exercise an Initial Opt-Out right or to rescind AIO contract).

It cannot be disputed that the aforementioned plaintiffs completed and submitted to the AHP Settlement Trust the Pink Form electing the AIO. *See* Exhibit J. By submitting this Pink Form, those plaintiffs elected the AIO, unconditionally releasing all claims against Wyeth and expressly waiving their right to opt out of the Settlement Agreement. The Court should enforce the contract entered into by the aforementioned plaintiffs and dismiss their claims.

B. **A SIGNIFICANT MAJORITY OF PLAINTIFFS ARE NOT MEDICALLY ELIGIBLE TO BRING THEIR DOWNSTREAM OPT-OUT CLAIMS AND THEY SHOULD BE DISMISSED**

The vast majority of the additional plaintiffs claim to be eligible to file suit as Intermediate and/or Back-End Opt-Outs, but their allegations are belied by the very echocardiogram reports they have submitted.

For Intermediate Opt-Outs, the Settlement Agreement provides that "All Diet Drug Recipients . . . who have been diagnosed by a Qualified Physician as FDA Positive by an Echocardiogram performed between the commencement of Diet Drug use and the end of the Screening Period . . . and eligible to exercise a right to Intermediate Opt-Out." Settlement Agreement § IV(D)(4)(a). Thus, in order to qualify as an Intermediate Opt-Out, a plaintiff must demonstrate FDA Positive valvular regurgitation. As this Court is well aware, "FDA Positive" valvular regurgitation, as defined in the Settlement Agreement, is "moderate or greater regurgitation of the mitral valve of the heart as

defined in Singh[8] (1999) and measured by an echocardiographic examination performed and evaluated by qualified medical personnel following the protocol as outlined in Feigenbaum (1994) or Weyman (1994)" (footnotes omitted). Settlement Agreement § I.22(b).

Additionally, section IV(D)(4)(a) of the Settlement Agreement provides that Class Members "who have been diagnosed by a Qualified Physician as FDA Positive or as having Mild Mitral Regurgitation by an Echocardiogram performed between the commencement of Diet Drug use and the end of the Screening Period, and who reach a Matrix-Level Condition after September 30, 1999, but before the Matrix Payment Cut-Off Date" and who meet certain other requirements, are eligible to exercise a Back-End Opt-Out right.

In other words, to be medically eligible to assert a Back-End Opt-Out claim, a person must:

    (a)    have been diagnosed by a Qualified Physician with an "FDA Positive" condition, or with mild mitral valve regurgitation, based on an echocardiogram performed after the beginning of use of Pondimin or Redux and on or before January 3, 2003; **and**

    (b)    have first reached a "Matrix-Level" condition based on valvular heart disease after September 30, 1999, or have first been diagnosed as having endocardial fibrosis between September 30, 1999 and September 30, 2005.

Unless they are claiming endocardial fibrosis – and none of these plaintiffs are – every purported Back-End Opt Out must be diagnosed with FDA-Positive regurgitation and one of numerous consequential conditions that would have put them on the matrix.

---

[8] J.P. Singh, et al., *Prevalence of Clinical Determinants of Mitral, Tricuspid and Aortic Regurgitation (The Framingham Heart Study)*, 83 Am. J. Cardiology 897, 898 (1999). *See* Settlement Agreement § I.22.b.

Examples include bacterial endocarditis, or a pulmonary artery systolic pressure greater than 45 mmHg. Not only do these plaintiffs not present matrix-level injuries, but their own echocardiograms disclose that they have not even been diagnosed with FDA-Positive regurgitation.[9] *See* below chart and corresponding echocardiogram reports attached as Exhibit K.

The following chart shows, case by case, the plaintiff, the diagnosis and the diagnosing cardiologist. All of the "diagnosing cardiologists" are experts retained by plaintiffs in the diet drug litigation:

*Robbins et al. v. Wyeth et al.*

| Plaintiff Name | Date/Provider | Echocardiogram Report | FDA Positive or Medically Eligible to Assert Downstream Opt-Out? |
|---|---|---|---|
| Anita Mattox | 04/22/01 - Dr. Razzak Tai | Mild mitral regurgitation<br>Aortic valvular function is normal | No |
| Johnnie Bagley | 04/21/01 - Dr. Razzak Tai | Mild mitral regurgitation<br>No aortic regurgitation noted | No |
| Beverly Ricket | 04/21/01 - Dr. Razzak Tai | Mild Mitral regurgitation<br>Aortic valve has normal function | No |

*Harmon et. al. v. Wyeth et al.*

| Plaintiff Name | Date/Provider | Echocardiogram Report | FDA Positive or Medically Eligible to Assert Downstream Opt-Out? |
|---|---|---|---|
| JaMetra Bagley | 04/21/01 - Dr. Razzak Tai | Mitral valve shows normal structure and function<br>Aortic valve has normal structure and function | No |
| Dianne Carothers | 04/21/01 - Dr. Razzak Tai | Mitral valve shows normal structure and function<br>Aortic valve has normal structure and function | No |

---

[9] Indeed, the Complaints in these cases do not allege that any of the plaintiffs have any such condition, much less identify or quantify such a condition. Instead, the Complaints generally allege, as to *all* the plaintiffs, "injuries to the heart," "pulmonary system injury" and "valvular insufficiency and/or regurgitation, damage and disease." *See Harmon, Robbins, Binion, Chandler, Mosley, Sanders* and *Stallings* Complaints, Exhibits B-H hereto, ¶ 4.6.

| Plaintiff Name | Date/Provider | Echocardiogram Report | FDA Positive or Medically Eligible to Assert Downstream Opt-Out? |
|---|---|---|---|
| Becky Cupp | 04/21/01 - Dr. Razzak Tai | Mitral valve shows normal structure and function<br>Aortic valve has normal structure and function | No |
| Felicia Edwards | 04/21/01 - Dr. Razzak Tai | Mitral valve shows normal structure and function<br>Aortic valve has normal structure and function | No |
| Iris Ezell | 04/22/01 - Dr. Razzak Tai | Mitral valve has a normal structure and function<br>Aortic valve has normal structure and function | No |
| Leanne Greer | 04/22/01 - Dr. Razzak Tai | Mild mitral regurgitation<br>Normal aortic valvular function | No |
| Barbara Hall | 04/21/01 - Dr. Razzak Tai | Mitral valve has normal structure and function<br>Aortic valve has normal structure and function | No |
| Coretta Hairston | 04/21/01 - Dr. Razzak Tai | Mitral valve shows normal structure and function<br>Aortic valve shows normal structure and function | No |
| Brenda White Hammite | 04/21/01 - Dr. Razzak Tai | "Minimal" mitral regurgitation<br>"Minimal" aortic insufficiency | No |
| Bonnie Henderson | 04/21/01 - Dr. Razzak Tai | Mitral valve has normal structure and function<br>Aortic valve has normal structure and function | No |
| Linda Hill | 04/21/01 - Dr. Razzak Tai | Mild mitral regurgitation<br>Normal aortic valvular function | No |
| Lila Hood | 04/21/01 - Dr. Razzak Tai | Mitral valve shows normal structure and function<br>Aortic valve has normal structure and function | No |
| Johnnie Humphries | 04/21/01- Dr. Razzak Tai | Mitral valve has a normal structure and function<br>Aortic valve has normal structure and function | No |
| Nancy Hutchins | 04/22/01 - Dr. Razzak Tai | "Trace of mitral regurgitation"<br>Aortic valvular function is normal | No |
| Jacqueline Greenlaw James | 04/21/01 - Dr. Razzak Tai | Mitral valve shows normal structure and function<br>"Minimal" aortic systolic gradient | No |

175846-1                                                      10

| Plaintiff Name | Date/Provider | Echocardiogram Report | FDA Positive or Medically Eligible to Assert Downstream Opt-Out? |
|---|---|---|---|
| Lisa Smith Lambert | 04/22/01 - Dr. Razzak Tai | Mitral valve is normal in structure and function<br>Aortic valve has normal structure and function | No |
| Natalie Morris | 04/22/01 - Dr. Razzak Tai | Mitral valve is of normal structure and function<br>Minimal aortic valvular stenosis | No |
| Harold Murphy | 04/22/01 - Dr. Razzak Tai | Mitral valve shows normal structure and function<br>Aortic valve shows normal structure and function | No |
| Sonva Pearson | 04/22/01 - Dr. Razzak Tai | Aortic valvular function is normal<br>Mitral valve shows "minimal thickening", otherwise normal function | No |
| Shirley Duck Reed | 04/21/01 - Dr. Razzak Tai | Mitral valve shows normal structure and function<br>Aortic valve has normal structure and function | No |
| Varnell Simpson | 04/21/01 - Dr. Razzak Tai | Mitral valve shows normal structure and function<br>Aortic valve shows normal structure and function | No |
| Wanda Marshall Smith | 04/22/01 - Dr. Razzak Tai | Mitral valve has normal structure and function<br>Minimal aortic stenosis | No |
| Jackie Stennis | 04/22/01 - Dr. Razzak Tai | Mitral valve normal structure and function<br>Aortic valvular functions appear to be normal | No |
| Pamela Thomas | 04/22/01 - Dr. Razzak Tai | Mitral valve shows a "trace" of regurgitation<br>The aortic valvular function is normal "except for a slight increase in the velocity and minimal systolic gradient" | No |
| Samantha Toles | 04/22/01 - Dr. Razzak Tai | Mitral valve has a normal structure and function<br>The aortic valvular function is normal. | No |

175846-1

11

| Plaintiff Name | Date/Provider | Echocardiogram Report | FDA Positive or Medically Eligible to Assert Downstream Opt-Out? |
|---|---|---|---|
| Donna Turner | 04/21/01 - Dr. Razzak Tai | Mild mitral regurgitation<br>Aortic valve has normal structure and function | No |
| Lisa Wells | 04/21/01 - Dr. Razzak Tai | Mitral valve shows normal structure and function<br>Aortic valve has normal structure and function | No |
| Anna Laura Williams | 04/21/01– Dr. Razzak Tai | Mitral valve shows "minimal thickening otherwise normal function"<br>Aortic valve has normal structure and function | No |
| Karen Alice Winter | 04/21/01 - Dr. Razzak Tai | Mild mitral regurgitation<br>No aortic regurgitation noted | No |

*Binion et al. v. Wyeth et al.*

| Plaintiff Name | Date/Provider | Echocardiogram Report | FDA Positive or Medically Eligible to Assert Downstream Opt-Out? |
|---|---|---|---|
| Essie L. Archie | 04/22/01 - Dr. Razzak Tai | Mitral valve is of normal structure and function<br>No aortic regurgitation noted | No |
| Kimberly B. Boone | 06/24/01 - Dr. Razzak Tai | Mitral valve is "thickened" with normal function<br>Aortic valvular function is normal | No |
| Eddie H. Busby | 06/24/01 - Dr. Razzak Tai | Mitral valve is "thickened" with normal function<br>No aortic regurgitation noted | No |
| Rebecca Carlisle | 10/27/01 - Dr. Razzak Tai | Mild mitral regurgitation<br>No aortic regurgitation noted | No |
| Mike Cowell | 06/25/01 - Dr. Razzak Tai | Mitral valve is "thickened" with normal function<br>No aortic regurgitation noted | No |
| Jeanne Cowell | 06/25/01 - Dr. Razzak Tai | Mitral valve is "thickened" with normal function<br>No aortic regurgitation noted | No |
| Gail Lynn Hudson Douglas | 06/24/01 - Dr. Razzak Tai | Mitral valve is "thickened" with normal function<br>Aortic valvular function is normal | No |
| Ladye J. Durdin | 04/22/01 - Dr. Razzak Tai | Mitral valve has normal structure and function<br>Aortic valvular function is normal | No |
| Anne S. Ellis | 04/21/01 - Dr. Razzak Tai | NO INFO? | No |
| Phyllis Evans | 10/27/01 - Dr. Razzak Tai | "Minimal" mitral regurgitation<br>No aortic regurgitation noted | No |

175846-1

12